UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD DAY, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 05 C 4912 |
| v. | ) ) ) | |
| CHECK BROKERAGE CORP. and DEAN SLOUGH | ) ) ) | Judge Joan B. Gottschall |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Edward Day sued defendants Check Brokerage Corporation ("CBC") and Dean Slough (collectively referred to as "defendants"), alleging that defendants sent him and the class he represents various debt collection letters that violate the Fair Debt Collection Practices Act, 15 U.S.C. §1692 (2006) ("FDCPA"). Specifically, Day alleges that defendants sent him a series of collection letters that were false, deceptive, or misleading as determined by the unsophisticated consumer standard and therefore violate 15 U.S.C. §§ 1692e, e(2)(A), e(5), and e(10); that defendants used unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §§ 1692f and f(1); and that defendants contradicted and/or overshadowed Day's right to dispute the alleged debt within thirty days of receipt of the initial communication in violation of 15 U.S.C. § 1692g(a). On March 2, 2007, the court granted plaintiff's motion for class certification. Presently before the court are defendants' motion for summary judgment and Day's motion for partial summary judgment. For the reasons that follow, Day's motion is granted in part and denied in part and defendants' motion is granted in part and denied in part.

**BACKGROUND**

Between March 3, 2005 and March 31, 2005, CBC, a debt collector, sent a series of four letters to Day in an attempt to collect a debt of $20.40 he owed to Oberweis Dairy ("Oberweis"). In the first letter, dated March 3, 2005, CBC informed Day that a check he had written to Oberweis for the amount of $20.40 did not clear. The letter stated that CBC had been retained by Oberweis to act as its agent in the collection of the check and that Day now owed CBC a total of $65.40. The total amount was comprised of (i) the initial amount of the check ($20.40); (ii) a $25.00 "Return Check Charge"; and (iii) a $20.00 "Bank charge to Merchant." The letter further stated that failure to make a prompt payment could result in additional fees and that it was in Day's "best interests to clear this check immediately." The final paragraph of the letter contained a notification that Day had thirty days to dispute the validity of the debt.

On March 17, 2005, CBC sent Day a second letter demanding the $65.40 and stating, "You were recently advised that the above check did not clear your bank and is now the property of Check Brokerage Corporation. . . . we suggest you give this matter your immediate attention." The letter then referred to and quoted Illinois Commercial Code § 3-806 regarding the liability for issuing a dishonored check. The quoted section stated that a person who issues a bad check shall be liable for "$25, or for all costs and expenses, including reasonable attorney fees, incurred by any person in connection with the collection of the amount for which the check was written . . . [.]"

On March 24, 2005, CBC sent Day a third letter demanding the $65.40 and stating, "WE MUST HAVE YOUR PAYMENT NOW!!" The letter then informed Day that, under Illinois law, he "could be liable for the amount of the check plus three times the amount of the check (not less than $100 and not more than $1500) plus attorney fees and court costs." The letter further stated

2

that, "additional charges are incurred the longer this remains unpaid."

On March 31, 2005, CBC sent Day a fourth letter demanding the $65.40 and stating, "THIS CHECK REMAINS UNPAID! WE ARE, THEREFORE, GOING TO SHOW YOU HOW MUCH IT COULD COST SHOULD IT GO TO LITIGATION." The letter then details, *inter alia*, how a judgment would cost Day a total of $363.00, how his failure to appear in court for the citation hearing would result in a warrant for his arrest, and states that judgments "are usually picked up by CREDIT BUREAUS and can have an adverse effect on your future credit." The letter concludes by stating, "Common sense would dictate that this check be paid at this point. THE AMOUNT DUE, INCLUDING THE CHECK AND SERVICE CHARGES TO THIS POINT, IS $65.40."

## ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).

When evaluating FDCPA claims, the court evaluates communications from debt collectors "through the eyes of an unsophisticated consumer." *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480,

483-84 (7th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996). The unsophisticated consumer is a "hypothetical consumer whose reasonable perceptions will be used to determine if collection messages are deceptive or misleading." *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). This presumes a level of sophistication that "is low, close to the bottom of the sophistication meter," *Avila*, 84 F.3d at 226, and "protects the consumer who is uninformed, naive, or trusting," *Gammon*, 27 F.3d at 1257.

As an initial matter, the court notes that it disagreed with how Day organized some of his arguments (and which FDCPA sections were violated). As noted more specifically below, the court has chosen to place and analyze Day's arguments in the FDCPA sections it feels are the most logical and suitable.

**I.	15 U.S.C. § 1692f**

The FDCPA prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt," including "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §§ 1692f and f(1). In addition to Day's original debt, defendants attempted to collect two additional fees: a $25.00 "Return Check Charge" and a $20.00 "Bank charge to Merchant." These additional amounts are allowed only if they are authorized by the agreement creating the debt or permitted by law. *Id.*

Defendants argue that both charges were proper because the Check Recovery Agreement (the contract between CBC and Oberweis) specifically allowed CBC to collect a $20.00 "bank charge" per check. The fact that the Check Recovery Agreement allowed for this charge is irrelevant; the issue is whether the agreement creating the debt allowed for such a charge. Because neither party

4

mentions such an agreement, the only way the charges were proper is if they were "permitted by law." In order to determine whether the charges were "permitted by law," the court must look to Illinois law. *Ozkaya v. Telecheck Servs., Inc.*, 982 F. Supp. 578, 585 (N.D. Ill. 1997). Under Illinois law,

> A person who undertakes a nonlitigated collection against the person who issued a check or other draft that is not honored upon presentment shall make a written demand by certified mail, return receipt requested, delivered to the last known address of that person in order to become eligible for any costs and expenses in excess of $25. The written demand shall demand payment within 30 days of the mailing of the demand and shall include notice of liability for the costs and expenses.

810 ILCS 5/3-806. In other words, a debt collector is entitled to collect $25 in costs and expenses in addition to the face value of the check. If, however, the costs and expenses exceed $25, then notice by certified mail is required. Here, it is undisputed that defendants never contacted Day by certified mail. As a result, under Illinois law, defendants were permitted to charge only an additional $25 fee.[1] Because they added a total of $45.00 in fees to Day's original debt, and were not permitted by law to do so, defendants violated Sections 1692f and f(1)'s prohibition against collecting an amount not permitted by law. Day's motion for partial summary judgment on his Sections 1692f and f(1) claim is granted; defendant's motion for summary judgment on this claim is denied.

---

[1] Defendants argue that the limitation on "costs and expenses" in 810 ILCS 5/3-806 refers only to litigation expenses and, therefore, their $20 "Bank charge to Merchant" fee is not prohibited. First, defendants provide no support for this assertion. Second, defendants' argument is nonsensical – 810 ILCS 5/3-806 is directed to "nonlitigated collection" efforts, or those situations where there is no litigation. Section 5/3-806 specifies that "costs and expenses shall include reasonable costs and expenses incurred in the nonlitigated collection of the check or other draft."

## II. Violations of 15 U.S.C. § 1692e

### A. Section 1692e(2)(A) – False Representation of the Character, Amount or Legal Status of the Debt

According to Day, defendants falsely represented the amount and legal status of Day's debt.[2] The court agrees that defendants violated Sections 1692e and e(2)(A) by falsely representing the amount of the debt. In three of the four collection letters, defendants listed Day's debt (or the "balance due") as $65.40, which represented his original $20.40 debt, along with the $25.00 "Return Check Charge" and $20.00 "Bank charge to Merchant." For the reasons described above, defendants' attempt to collect $45 in fees was improper under Illinois law. Therefore, defendants' declaration of Days's debt, identified as the "balance due," was false in that it improperly included $45 in fees.

While the court agrees that defendants falsely represented the amount of Day's debt, it does not agree that this was also a misrepresentation of the "legal status" of his debt. Day does not dispute that he owed a debt to Oberweis, but rather contests the amount defendants attempted to collect. Day fails to explain to the court how the inflated statement of his debt was a misrepresentation of the "legal status" of the debt.

Day's motion for partial summary judgment on his Sections 1692e and e(2)(A) claim is granted with respect to the "amount" of the debt, but denied with respect to the "legal status" of the

---

[2] Day also argues that defendants falsely represented the amount of his debt by listing improper charges for punitive damages, filing fees, sheriff service, attorney fees and filing of citation. Because these were not listed as part of Day's debt, but rather as charges he could face in the future if he failed to pay his debt, the court has analyzed these charges as misrepresentations under Section 1692e and e(10).

debt; defendants' motion for summary judgment on this claim is denied with respect to the "amount" of the debt, but granted with respect to the "legal status" of the debt.

### B. Sections 1692e, e(5) and e(10)

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "the threat to take any action that cannot legally be taken or that is not intended to be taken," and "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e, e(5), and e(10).

Day argues that defendants violated Sections 1692e and e(5) by misleading the unsophisticated consumer into believing that they were threatening legal action to collect the debt unless they were paid when defendants did not intend to sue, nor could they legally sue, Day. As pointed out by Day, defendants threatened liability for "attorney fees" and "courts costs" if Day did not pay "NOW ! !" Seven days later, defendants outlined "HOW MUCH IT COULD COST SHOULD IT GO TO LITIGATION." In that letter, defendants separately listed amounts for punitive damages, filing fees, sheriff service, and attorney fees, and went on to list fees for filing a citation and sheriff service "[a]fter judgment is obtained." Finally, defendants warned Day that if he failed to appear for a citation hearing, the judge would issue an arrest warrant and would require a bond to be posted for Day to get out of jail. The letter goes on to say that judgments are picked up by credit bureaus and can adversely effect future credit.

The court first must determine whether an unsophisticated consumer would believe that defendants threatened legal action. 15 U.S.C. § 1692e(5). As an initial matter, defendants do not even attempt to argue that an unsophisticated consumer would not view the statements, taken

7

together, as a threat to take some kind of legal action. The import of the statements, taken as a whole, is that some type of legal action is about to be initiated and can be averted only by making a payment. Based on these representations, the court concludes that an unsophisticated consumer would understand that he was being threatened with legal action. The next question, then, is whether defendants could legally take such action or whether they intended to take such an action.

Under Illinois law, a debt collector may sue a debtor only if the debt has been legally assigned to him. 225 ILCS 425/8b. Under Illinois law,

> An account may be assigned to a collection agency for collection with title passing to the collection agency to enable collection of the account in the agency's name as assignee for the creditor provided: (a) The assignment is manifested by a written agreement, separate from and in addition to any document intended for the purpose of listing a debt with a collection agency. The document manifesting the assignment shall specifically state and include: (i) the effective date of the assignment; and (ii) the consideration for the assignment.

225 ILCS 425/8b. Here, defendants have put forward no evidence of a valid assignment. While defendants claim that CBC "clearly had been authorized to file suit" by its agreement with Oberweis, that argument is not persuasive. As Day points out, Illinois law requires that any assignment be contained within a written document which is separate from the contract listing the debt with defendants. There is no evidence of the existence of any such written document. In addition, there is no evidence that defendants paid any consideration to Oberweis for the ability to sue Day. Rather, defendants merely assert that, as Oberweis' agent, they had the authority to initiate suit. Unfortunately for defendants, that is not sufficient under Illinois law. Therefore, because defendants were not assignees, defendants were not legally permitted to sue Day (or the class members). As a result, defendants violated Sections 1692e and e(5) by threatening to take legal action they could not legally take.

Additionally, Day argues a violation of Section 1692e(5) occurred because defendants did not intend to sue Day. In their own Rule 56.1 Statement of Material Facts, defendants admit that they mistakenly sent Day the March 31, 2005 letter (in which they list what a "judgment would cost") because they "do not sue" individuals in Cook County. In his depositon, Dean Slough stated that "The letter that [Day] got was an accident. It's a county that we do not sue in, so the letter – he should have not received that letter that said we are going to sue him. That is restricted to counties where we do sue for the merchant." (D. Slough dep. at 80, lines 1-5.) This admission by Slough conclusively establishes that defendants threatened litigation when they did not intend to sue, thus violating Sections 1692e and e(5). The court can assume only that defendants included this fact in order to attempt to establish a *bona fide* error defense. However, none of defendants' briefs mentions this defense at all, and the court finds it waived. *Kramer v. Banc of America Securities, LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004) (undeveloped arguments are waived).

With respect to Sections 1692e and e(10), the court likewise finds a violation.[3] Section 1692(e)(10) prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." In its March 24, 2005 letter, defendants warned Day that "Illinois law is now tough. It states you could be liable for the amount of the check plus three times the amount of the check (not less than $100 and not more than $1500) plus attorney fees and court costs." Defendants admit that "Illinois law" refers to 720 ILCS 5/17-1a, a section of the Illinois Criminal Code which provides civil liability for "deceptive practices,"

---

[3] In his motion, Day argued that defendants' reliance on 720 ILCS 5/17-1a was a violation of Section 1692e(2)(A) in that it was a misrepresentation as to the "legal status of the debt." This analysis more properly fits under Section 1692e(10)'s prohibition against "the use of any false representation or deceptive means to collect or attempt to collect any debt[.]"

including the issuance of bad checks. Under this section, the payee of a bad check, or a person subrogated to the rights of the payee, may sue for the face value of the check, treble damages up to $1,500, and attorneys fees and court costs. 720 ILCS 5/17-1a.

Day argues that he could have been liable for these charges only if defendants met the requirements of 720 ILCS 5/17-1a and sent "a written demand by both certified mail and by first class mail to [Plaintiff's] last known address." It is undisputed that defendants did not send a written demand to Day by both certified mail and first class mail.

In response, defendants argue – without any citation to statute or case law – that the court can excuse their failure to comply with 720 ILCS 5/17-1a because Day, in fact, received the letters. The plain language of the statute requires a written demand via both certified and first class mail. The statute contains no exception to this requirement and defendants have failed to provide any legal authority to support the notion that the court should excuse Section 5/17-1a's explicit requirements. Because defendants could not rely on the triple damages and attorney fees provision of Section 5/17-1a, they falsely informed Day that he could be liable for those amounts, thus violating Section 1692e(2)(A) of the FDCPA.

In addition, even if the court were to overlook defendants' failure to comply with the demand requirements under Illinois law, Day would be obligated only to pay triple the amount of the debt, attorney fees and court costs "to the payee or a person subrogated to the rights of the payee[.]" 720 ILCS 5/17-1a. By way of background, the Seventh Circuit has already found, in *Gearing v. Check Brokerage Corporation*, 233 F.3d 469 (7th Cir. 2000), that CBC violated the FDCPA by identifying itself as a creditor's subrogee when it was not, in fact, subrogated to the rights of the creditor, as required by 720 ILCS 5/17-1a. In order to be subrogated, defendants must show that they "paid a

10

claim or debt for which a third party is primarily liable and that [they] seek[] to enforce a right against that third party possessed by the subrogor. In addition, the party claiming a right of subrogation must establish that he is not a volunteer, but instead under compulsion to satisfy the debt." *Gearing*, 233 F.3d at 472 (internal quotations omitted). In *Gearing*, the Seventh Circuit held that, although CBC had agreed to purchase a check from the creditor, because CBC had expressly reserved the right to return the check to the creditor, it was merely a volunteer and not subrogated to the rights of the creditor. *Id.*

Here, defendants do not even attempt to argue that they have a right of subrogation. There is no evidence that CBC paid any claim to Oberweis to enforce any right against Day. Here, as in *Gearing*, defendants were volunteers who were able to, and actually did, return Day's check to Oberweis and close their file. Having failed at their subrogation argument in *Gearing*, defendants now change tack and argue that they were Oberweis's agent, and could therefore recover the damages outlined in 720 ILCS 5/17-1a, presumably on behalf of Oberweis. The court disagrees. First, the plain language of the statute only gives the payee, or someone subrogated to the rights of the payee, the right to sue for damages. Because defendants admittedly are not subrogated to the rights of Oberweis, they cannot sue Day for damages under 720 ILCS 5/17-1a. Second, defendants' agency theory holds up only if they intended to collect the special damages for the benefit of Oberweis, and not for their own benefit. However, there is no evidence, and nothing in the contract between defendants and Oberweis, which would support this. Therefore, defendants' statement that Day "could be liable" to defendants for triple damages and attorney fees and court costs was false and violated Sections 1692e and e(2)(A).

Day argues that defendants also violated Sections 1692e and e(10) by misrepresenting the

11

amounts regarding filing fees, sheriff service, attorney fees, and filing of a citation. Defendants admit that the amounts listed for "Filing Fee," "Sheriff Service," and "Filing of Citation" are incorrect, and that the amount for "Attorney Fees" was merely an estimate based on attorneys in Illinois counties hundreds of miles from Cook County, the only place a lawsuit against Day could have been filed. Instead, they argue that "Check Brokerage never represented to the Plaintiff that the mentioned figures would be what litigation 'will' or 'would' cost Plaintiff, only how much it 'could' cost Plaintiff if litigation was undertaken." This argument is not persuasive. The amounts listed were incorrect, and thus, if Day were sued, these are not the amounts he "could" face. Despite the fact that the listed amounts were likely less than the actual amounts, the fact remains that they were inaccurate, and thus, false. Defendants provide no support for their contention that these amounts were not misrepresentations because they were less than the actual amounts. These misrepresentations therefore violate Sections 1692e and e(10).

Finally, defendants violated Sections 1692e and e(10) by misrepresenting to Day that his check was the property of CBC. Defendants admitted that Day's check was never the property of CBC.

Day's motion for summary judgment on his claims relating to Sections 1692e, e(5) and e(10) is granted; defendants' motion on these claims is denied.

**III.    15 U.S.C. § 1692g**

Section 1692g requires debt collectors to inform the consumer that he or she has 30 days after receipt of the notice to dispute the debt, after which time it is assumed valid. "A debt validation notice, to be valid, must be effective, and it cannot be cleverly couched in such a way as to eviscerate its message." *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 518-19 (7th Cir. 1997)

(citing *Avila*, 84 F.3d at 226). Even if a letter properly contains the information mandated by Section 1692g(a), "the debt collector may not overshadow or contradict that information with other messages sent with the validation notice or within the validation period." *Id.* at 518. The information sent along with the validation notice is "overshadowing" if it renders the letter "confusing," *see Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997), or if it makes the debtor "uncertain as to her rights," *see Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996). "[T]he unsophisticated consumer is to be protected against confusion, whatever form it takes. A contradiction is just one means of inducing confusion; 'overshadowing' is just another; and the most common is third, the failure to explain an apparent though not actual contradiction...[.]" *Bartlett*, 128 F.3d at 500.

Day contends that defendants violated Section 1692g's requirement to explain his rights to verify and dispute the debt by contradicting and overshadowing the validation notice. Specifically, he claims that the following demands for payment overshadowed his verification rights: demanding payment "immediately" (3/3/05); demanding "immediate attention" (3/17/05); demanding payment "NOW!!"(3/24/07); stating that "[c]ommon sense would dictate that this check be paid at this point" (3/31/05).

The first determination the court must make is whether the letters are clearly "confusing" on their face. In some situations, when a Section 1692g violation is so "clearly" evident on the face of a collection letter, a court may award summary judgment to the FDCPA plaintiff. *Avila*, 84 F.3d at 226-27. On the other hand, mere speculation that a collection letter confuses the unsophisticated debtor is not enough for an FDCPA plaintiff to survive an opposing debt collector's summary judgment motion. *See Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1061 (7th

Cir. 2000). "Thus, when the letter itself does not plainly reveal that it would be confusing to a significant fraction of the population, the plaintiff must come forward with evidence beyond the letter and beyond his own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial." *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 415 (7th Cir. 2005); *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948-49 (7th Cir. 2004). If it is unclear whether the letter would confuse intended recipients, then the plaintiff must, in order to make out a *prima facie* case under Section 1692g, "present evidence (beyond her own say-so) of confusion, for example in the form of a carefully designed and conducted consumer survey[,]" *Chuway*, 362 F.3d at 948, or through expert testimony. *Pettit*, 211 F.3d at 1062.

Here, the parties have put forward no expert opinions or consumer surveys. Instead, Day argues that he is entitled to summary judgment on this claim because the collection letters at issue are clearly confusing on their face. Day relies on a series of Seventh Circuit cases that pre-date *Chuway*; those cases allow an FDCPA plaintiff to win on summary judgment if the letter at issue is clearly confusing. *Avila*, 84 F.3d at 227 (holding that letter containing contradictory language was confusing as a matter of law without evidence of actual consumer confusion); *Chauncey*, 118 F.3d at 519 (affirming grant of summary judgment to FDCPA plaintiff where letter was confusing on its face). However, these pre-*Chuway* cases are silent on whether or not the plaintiff must testify that he was actually confused by the collection letter. Neither party addresses the fact that *Chuway* and *Durkin*, cases more recent than those cited by plaintiff, require testimony from the plaintiff in order for the plaintiff to be eligible for summary judgment without resort to extrinsic evidence. In *Chuway*, the Seventh Circuit spells out quite clearly that if a plaintiff does not have extrinsic or expert evidence, he must show that he was confused by the letter and that he is representative of the type

14

of people who received the letters. 362 F.3d at 948. Likewise, the Seventh Circuit in *Durkin*, while not faced with the issue directly, also suggests that testimony from the plaintiff regarding his own confusion is required in order for a plaintiff to get summary judgment without extrinsic evidence. 406 F.3d at 415; *see also Stines v. M.R.S. Assocs.*, No. 104CV0771SEBJPG, 2005 WL 2428200, at *4 (S.D. Ind. Sept. 30, 2005) (noting that *Chuway* and *Durkin* require credible factual testimony asserting actual confusion on the part of the complaining party). While Day argues that the letters are confusing on their face, he has put forward no evidence that he was confused by the letters and that he is representative of the people who received the same or similar letters. Without this, he cannot rely solely on the letters at issue, but must present extrinsic evidence via a consumer survey or expert testimony. Because he has failed to put forward any extrinsic evidence, Day has not presented evidence sufficient to survive summary judgment. Under *Chuway*, he has failed to meet his *prima facie* burden and his motion for summary judgment on Section 1692g is therefore denied; defendants' motion for summary judgment on this claim is granted.

## CONCLUSION

For the reasons described above, Day's motion for partial summary judgment is denied in part and granted in part. Defendants' motion for summary judgment is denied in part and granted in part.

ENTER:

\_\_\_\_/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 26, 2007

15